IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| VERONICA TAYLOR | : | |
| | : | |
| v. | : | Civil Action No. CCB-09-1111 |
| | : | |
| PATUXENT INSTITUTION. | : | |

…o0o…

## MEMORANDUM

Now pending before the court is a motion to dismiss, filed by defendant Patuxent Institution (hereinafter "Patuxent") against plaintiff Veronica Taylor. Ms. Taylor alleges unlawful discrimination on the basis of sex and race, retaliation, and constructive discharge under Title VII of the Civil Rights Act of 1964 ("Title VII"). She also alleges that she was denied due process of law when the defendant demoted her.[1] The issues in this case have been fully briefed, and no oral argument is necessary. For the reasons stated below, the defendant's motion will be granted.

## BACKGROUND

Until she resigned in September 2008, Ms. Taylor was a Correctional Officer Captain at the Patuxent Institution in Jessup, Maryland. She worked at Patuxent for eighteen years, but resigned rather than accept demotion from Captain to the rank of Lieutenant. A particular event ("the incident") led to Ms. Taylor's demotion. On August 22, 2008, Ms. Taylor was working the evening shift at Patuxent. Around 6:00 p.m., she asked Captain Jeffrey Stewart, the senior captain on duty, for permission to leave the prison to attend to a personal emergency. Ms. Taylor has not provided any details as to the nature of the personal emergency. Captain Stewart

---

[1] Ms. Taylor's amended complaint does not restate all of the underlying allegations set forth in her initial complaint and, therefore, the defendant's motion to dismiss interpreted the amended complaint as a supplement, rather than a substitute for the complaint. (*See* Def.'s Mot. to Dismiss at 2 n.1)  The court will do the same.

1

apparently gave Ms. Taylor permission to leave the facility and asked that she bring back a tuna salad sandwich from Subway.  Lieutenant Herbert Foote also asked that she bring back a package of pepperonis from the supermarket.  Ms. Taylor then asked Captain Stewart for additional permission to bring back a birthday cake for Sergeant Ricardo Henriquez, whose birthday it was; he granted her request.  Ms. Taylor left the prison at approximately 8:00 p.m. and returned an hour later with a sandwich, pepperonis and two birthday cakes.  The defendant submits that Ms. Taylor did not clock-out during this time.

Soon thereafter, on approximately September 9, 2008, Ms. Taylor was demoted to the rank of Lieutenant on the grounds that she left the prison and brought two cakes into the prison without proper authorization.  The August 22nd incident was not the only complaint against Ms. Taylor, however.  She was also accused of favoritism for recognizing certain officers for exceptional job performance during roll call. (Compl. at ¶ 41.)  Specifically, a complaint had been filed by a subordinate of hers who had not been recognized during roll call.  (*Id*. at ¶ 42.)  Additionally, Ms. Taylor acknowledges that in the two years preceding her demotion Warden Johnson filed at least three complaints against her for "various infractions" including insubordination.  (Am. Compl. at 3, 7.)  She apparently "grieved" each of the complaints against her, and they were all reduced to counseling.  (*Id*. at 3.)  Ms. Taylor states that in response to Warden Johnson's latest complaint against her for insubordination (which was filed on February 28, 2008), she filed a grievance with the Office of Administrative Hearing (the "OAH") on March 1, 2008, and was given a hearing date of October 15, 2008.  (*Id*. at 3, 7.)  The hearing never occurred because Ms. Taylor had resigned by that point.  Accordingly, the sanction was reduced to counseling on October 7, 2008.  (*Id*.)

Ms. Taylor alleges that she was not given any advance notice of her demotion, and that she immediately resigned from her position at Patuxent upon learning of her demotion. She did not appeal the demotion decision. Mr. Randall Nero, the director of Patuxent, allegedly barred her from employment at all correctional facilities in the State of Maryland. Ms. Taylor filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and was issued a Notice of Right to Sue letter ("NRTS") that she received on February 4, 2009.

In the current suit, Ms. Taylor, now proceeding *pro se*, makes several claims under Title VII and the Due Process Clause of the Fourteenth Amendment. First, she alleges that she was unlawfully discriminated against because of her race (African American) and gender. Second, she alleges that her demotion was unlawful retaliation for her filing a grievance with the OAH. Third, she contends that she was constructively discharged from her position at Patuxent because of two years of "continuous harassment". (*Id*. at 8.) Last, she alleges that Patuxent violated her due process rights when it demoted her to the rank of Lieutenant.

## **ANALYSIS**

"[T]he purpose of Rule 12(b)(6) is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotation marks and alterations omitted). When ruling on such a motion, the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir.1997). To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint

are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, the plaintiff's obligation is to set forth sufficiently the "grounds of his entitlement to relief," offering more than "labels and conclusions." *Id.* (internal quotation marks and alterations omitted); *see Young v. City of Mount Ranier*, 238 F.3d 567, 577 (4th Cir. 2001) ("the presence [in a complaint] . . . of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support" the necessary legal finding). Although the court must afford a *pro se* complaint liberal construction, *Sado v. Leland Mem'l Hosp.*, 933 F. Supp. 490, 493 (D. Md. 1996) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)), a *pro se* plaintiff must still plead facts that state a claim for relief. *Id.*

A.   *Title VII Claims*

Generally, a plaintiff may establish a claim for discrimination through two avenues of proof. *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004). First, a plaintiff may demonstrate through direct or circumstantial evidence that discrimination motivated an employer's adverse employment action. *Id.* Second, where there is no direct evidence of discrimination, a plaintiff may proceed under a pretext framework and raise an inference of discrimination as set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* at 285 (internal quotation marks omitted). Because Ms. Taylor's complaint does not include any allegations of direct discrimination, the court will analyze her claims under the pretext framework.

   1.   *Discrimination*

Construing Ms. Taylor's complaint liberally, she appears to allege that she was discriminated against because of her race and/or gender when she was demoted to the rank of

Lieutenant shortly after the August 22nd incident. But for the reasons described below, Ms. Taylor has failed to plead facts that state a claim of race or gender discrimination.

To state a *prima facie* case of employment discrimination where a demotion has occurred, the plaintiff must show that: (1) she was a member of a protected class; (2) she was discharged or demoted; (3) at the time of her discharge or demotion, she was performing her job at a level that met her employer's legitimate expectations; and (4) her discharge or demotion occurred under circumstances that raise a reasonable inference of unlawful discrimination. *See Halperin v. Abacus Tech. Corp.*, 128 F.3d 191, 201 (4th Cir. 1997), *abrogated on other grounds by, Baird ex rel. Baird v. Rose*, 192 F.3d 462 (4th Cir. 1999). By contrast, to state a *prima facie* case of discrimination with regard to disciplinary measures, a plaintiff who is a member of a protected class must show: (1) that she "engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against [her] were more severe than those enforced against the other person." *Lightner v. City of Wilmington*, 545 F.3d 260, 264-65 (4th Cir. 2008) (citing *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)) (internal quotation marks omitted).

Although it is undisputed that Ms. Taylor is a member of a protected class and that she was demoted, she has not alleged facts sufficient to survive the defendant's motion to dismiss under either theory of discrimination. First, Ms. Taylor states explicitly in her complaint that she was demoted because she left the prison without authorization and brought back two birthday cakes without permission except from Captain Stewart. (Compl. at ¶ 40.) She also acknowledges that in the two years preceding her demotion, Warden Johnson filed several complaints against her for "various infractions" including insubordination. (Am. Compl. at 3, 7.) Thus, even drawing all inferences in favor of Ms. Taylor, there are not sufficient facts alleged to

suggest that Ms. Taylor was performing her job satisfactorily. Rather, as she admits, her demotion was specifically the result of her engagement in what the defendant believed was prohibited behavior.

Likewise, Ms. Taylor has not alleged any facts suggesting that she engaged in prohibited conduct similar to that of a person of another race or gender, or that the disciplinary measures taken against her were more severe than those taken against the other person. Neither the complaint nor the amended complaint even mentions another employee engaging in prohibited conduct or receiving less severe discipline than Ms. Taylor.[2] Accordingly, Ms. Taylor's discrimination claim will be dismissed.

   2.   *Retaliation*

Ms. Taylor also alleges that she was retaliated against in violation of Title VII because the defendant demoted her after she filed a grievance in response to Warden Johnson's latest complaint against her for insubordination. Because Ms. Taylor has failed to allege that she engaged in protected activity, however, her retaliation claim must also fail.

To establish a *prima facie* case of retaliation, a plaintiff must show that she: (1) engaged in a protected activity; (2) the employer acted adversely against her; and (3) the protected activity and the adverse action were causally connected. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007). A plaintiff can demonstrate that an employer "acted

---

[2] In her reply to the defendant's motion to dismiss, however, Ms. Taylor describes for the first time the disciplinary measures taken against Captain Tamela Mitz. (*See* Pl.'s Opp'n to Def.'s Mot. to Dismiss at 3.) She alleges that "on or about July 15, 2009 Captain Tamela Mitz received a disciplinary violation from her shift commander . . . for breach of security" that resulted in an officer's injury. (*Id*.) According to Ms. Taylor, Captain Mitz received a five-day suspension for her actions, but not a demotion. (*Id*.) Even if these additional facts had been set forth in Ms. Taylor's pleadings, they would not be sufficient to state a claim for discrimination. First, there are no allegations that Captain Mitz is outside the protected class. In fact, it is clear that Captain Mitz is also female. Second, there are no allegations that Captain Mitz engaged in *similar* prohibited conduct.

adversely" by showing that "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotation marks and citation omitted); *see Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008). If a plaintiff shows that he or she opposed discriminatory practices by "complain[ing] to his or her employer or participat[ing] in an employer's informal grievance procedure in an orderly and nondisruptive manner," then the employee's activities are entitled to protection. *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999). The plaintiff's complaint to her employer, however, must be about unlawful employment practices that she reasonably believes are unlawful. *Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 338-39 (4th Cir. 2006).

     Ms. Taylor has simply not alleged that she ever complained to the defendant about discrimination or other unlawful employment practices. Nothing in her pleadings suggests that the grievance that she filed with the OAH complained of discriminatory activity by the defendant. Rather, she states plainly that she filed a grievance to challenge the insubordination complaint against her. (*See* Am. Compl. at 3.) While any complaint, even informal, about discriminatory employment practices may qualify as protected activity, a complaint solely challenging disciplinary actions does not. *See Balzas v. Liebenthal*, 32 F.3d 151, 159 (4th Cir. 1994) (holding that a filing of a charge with the EEOC that "simply alleged that he had been accused of doing something – sexually harassing his co-workers – which he did not do" was not protected activity because "[i]t had nothing to do with his race, color, religion, sex or national origin.") Therefore, Ms. Taylor's unlawful retaliation claim will also be dismissed.[3]

---

[3] Although Ms. Taylor eventually filed a charge of discrimination with the EEOC, she has not alleged that she did so *before* her demotion or that her doing so was the cause of her demotion.

*3.     Constructive Discharge*

Ms. Taylor's final claim under Title VII is that she was constructively discharged from her position at Patuxent because for two years she was the "target of continuous harassment." (Am. Compl. at 8.)  But even liberally construed, Ms. Taylor's complaint fails to allege facts that state either element of a claim of constructive discharge.

Where an employee is not actually terminated, she may nevertheless be able to state a claim for wrongful termination in violation of Title VII "if an employer deliberately makes the working conditions intolerable in an effort to induce the employee to quit." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 186 (4th Cir. 2004) (citing *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1353-54 (4th Cir. 1995)) (internal quotation marks omitted).  Thus, the plaintiff must show: "(1) the deliberateness of [the employer's] actions, motivated by racial [or sexual] bias, and (2) the objective intolerability of the working conditions." *Id*. at 186-87 (internal citations omitted).

Ms. Taylor has failed to allege any facts suggesting that her demotion was a deliberate attempt to induce her to quit.  She has alleged only that the defendant demoted her "on the grounds that she left the prison and later brought two cakes into the prison without authorization." (Compl. at ¶ 40.)  Furthermore, the fact that disciplinary complaints were filed against her on several occasions does not by itself raise an inference that the defendant deliberately sought Ms. Taylor's resignation.  *See Honor*, 383 F. 3d at 188 (finding that there was no evidence of an intention to pressure the plaintiff to resign where the plaintiff's superiors simply discussed with him his future at the company "in light of . . . professional tensions" and an impending departmental reorganization).

Moreover, Ms. Taylor has not alleged facts showing that she was subjected to objectively intolerable working conditions. Although she alleges that she was the "target of continuous harassment", (Am. Compl. at 8), she has not supported this conclusory allegation with any facts. Rather, in Exhibit C to her amended complaint, Ms. Taylor describes several instances when she and her superiors disagreed over disciplinary actions taken against her for insubordination.[4] Ms. Taylor may have found such discipline unwelcome, but a pattern of discipline does not amount to an objectively intolerable working environment. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004) (affirming dismissal on a 12(b)(6) motion of plaintiff's claim for constructive discharge because allegations that the plaintiff's "supervisors yelled at her, told her she was a poor manager and gave her poor evaluations, chastised her in front of customers, and once required her to work with an injured back" did "not establish the objectively intolerable working conditions necessary to prove a constructive discharge"); *Honor*, 383 F.3d at 187 (stating that the plaintiff's "mere frustration with his inability to accomplish his professional goals does not constitute an intolerable work condition for the purposes of establishing constructive discharge.") Although Ms. Taylor may have been discomforted by the tensions that seem to have existed between her and her superiors, the fact that she decided to resign instead of appealing the demotion decision does not create a cognizable claim of constructive discharge under Title VII. Accordingly, Ms. Taylor's constructive discharge claim will be dismissed.

---

[4] A court may consider documents outside the pleadings in ruling on a motion to dismiss without converting it to a motion for summary judgment where such documents are "integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge their authenticity." *Jackson v. Clark*, 564 F. Supp. 2d 483, 488-89 (D. Md. 2008) (citing *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)) (internal quotation marks and alterations omitted). Here, plaintiff has attached documents to her amended complaint and refers to them explicitly in the body of her pleadings. As she has not challenged the authenticity of the documents which she herself attached, the court will consider them where appropriate.

*C.     Due Process*

Ms. Taylor also alleges that the defendant violated her due process rights by demoting her to the rank of Lieutenant without giving her "notice of charges upon which the hearing to demote was predicated." (Am. Compl. at 5.)  Assuming Ms. Taylor had a protected interest in her continued employment, the constitutional right to due process requires only that "as a prerequisite to an intentional deprivation of a protected property interest, the government must provide some notice and an opportunity for hearing appropriate to the nature of the case." *Linton v. Frederick County Bd. of County Comm'rs*, 964 F.2d 1436, 1439 (4th Cir. 1992).  Ms. Taylor has not pled facts sufficient to state a claim under the Due Process clause and, therefore, her claim will be dismissed.

First, Ms. Taylor was not terminated by the defendant nor, as previously discussed, has she alleged facts sufficient to state a claim for constructive discharge.  Because Ms. Taylor has not alleged any facts suggesting that her resignation was anything but voluntary, her resignation from Patuxent does not implicate the due process clause, as the state did not deprive her of a property interest.  *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 173 n.7 (4th Cir. 1988) (stating that "the public employee who resigns voluntarily has . . . suffered no deprivation at the hands of the state; procedural due process is not implicated.").

Second, although Ms. Taylor contends that she was not "made aware of the charges against her until the defendants were required to submit their reports to the EEOC", (Am. Compl. at 5), she also alleges facts indicating that she received notice and a hearing prior to her announced demotion, as shown by the procedures the defendant followed under Maryland law.[5]

---

[5] Maryland law requires that before disciplinary action is taken against a public employee for misconduct, the appointing authority must: (1) investigate the alleged misconduct; (2) meet with the employee; (3) consider any mitigating circumstances; (4) determine the appropriate

Specifically, Ms. Taylor acknowledges that Warden Johnson received reports on the August 22nd incident in advance of her demotion, and that a "hearing to demote occurred on 9/9/08", during which she "was asked to leave the room while the panel deliberated" on what action should be taken against her. (*Id*. at 2, 5-6.) Furthermore, attached to her amended complaint as Exhibit B is a written notice of disciplinary action addressed to Ms. Taylor and informing her of her appeal rights. It is therefore evident from the complaint that before and after Ms. Taylor's demotion, the defendant afforded her the constitutional process she was due.[6]

## CONCLUSION

For the foregoing reasons, the defendant's motion to dismiss will be granted. A separate Order follows.

| | |
|---|---|
| November 30, 2009 | /s/ |
| Date | Catherine C. Blake |
| | United States District Judge |

---

disciplinary action, if any; and (5) give the employee written notice of the disciplinary action. MD. CODE ANN. STATE PERS. & PENS. § 11-106.

[6] Following the panel's decision to demote, Ms. Taylor had the right to appeal the decision to the Office of Administrative Hearing. MD. CODE ANN. STATE PERS. & PENS. §§ 11-109, 11-110. The burden is on the employee to initiate the appeal process. *Id*. Upon learning that she was to be demoted, however, Ms. Taylor resigned immediately rather than appeal the decision. (*See* Am. Compl. at 2) ("Plaintiff was asked to return and was informed that it was decided to demote her to the position of lieutenant. It was then that Plaintiff gave notice of her resignation in lieu of demotion.") By not taking advantage of the process made available to her, Ms. Taylor cannot now claim to have been denied due process of law.